UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Lynn Beth Baum, Debtor.

David Findling and
Findling Law Firm, PLC,

     Creditors-Appellants,                    No. 23-11140

v.                                         Honorable Nancy G. Edmunds

Tammy L. Terry, Chapter 13 Trustee,

     Trustee-Appellee.

_____/

**OPINION AND ORDER GRANTING TRUSTEE-APPELLEE'S MOTION TO DISMISS
[31] AND DENYING CREDITOR-APPELLANTS' MOTION FOR DIRECT
CERTIFICATION [19]**

Before the Court is Trustee-Appellee's motion to dismiss Creditor-Appellants' appeal from a bankruptcy court order. The order directed the disbursement of funds collected during the pendency of Debtor Lynn Beth Baum's ("Debtor") chapter 13 bankruptcy case that the Debtor voluntarily dismissed prior to plan approval. The Trustee-Appellee ("Trustee") argues that the Creditor-Appellants' ("Findling") appeal is constitutionally moot, and, alternatively, that Findling lacks standing to appeal. (ECF No. 31, PageID.531.) For the following reasons, the Court agrees that Findling lacks standing to appeal the order of the bankruptcy court in this matter.

**I.     Background**

1

This Court denied the Trustee's previous motion to dismiss for lack of jurisdiction, holding that Findling's appeal was timely, despite its imperfections. (ECF No. 16.) On April 23, 2024, Findling filed a motion for direct certification of his appeal to the Sixth Circuit. (ECF No. 19.) On April 30, 2024, the Trustee appealed this Court's order denying her motion to dismiss to the Sixth Circuit; this Court then stayed the case until the Sixth Circuit ruled on Trustee's appeal. (ECF No. 23.) The Sixth Circuit issued its ruling on June 13, 2025, finding that it lacked jurisdiction in the matter. (ECF No. 27.) The Trustee then filed the present motion on August 1, 2025. Because the motion raises jurisdictional questions, the Court must consider it before deciding Findling's motion for direct certification.

The only issue on appeal is whether a standing trustee may deduct and keep her fee collected under 28 U.S.C. § 586(e)(2) when a plan is not confirmed before dismissal and pre-confirmation payments must be returned to the chapter 13 debtor under 11 U.S.C. § 1326(a)(2). (ECF No. 3, PageID.23–4; ECF No. 19, PageID.395.) The Tenth Circuit described this question of statutory interpretation and the relationship between these two sections in *Goodman v. Doll*:

> A Chapter 13 debtor makes payments to a trustee who then disburses those payments to creditors according to a confirmed reorganization plan. A Chapter 13 standing trustee is compensated through fees he collects by taking a percentage of these payments the trustee receives from the debtor. 28 U.S.C. § 586(e)(2) directs that the standing trustee "shall collect" his fee "from all payments received . . . under" Chapter 13 reorganization plans for which he serves as trustee. 11 U.S.C. § 1326(a)(1) provides that a Chapter 13 debtor "shall commence making payments" to the standing trustee within thirty days of the date the debtor files a proposed reorganization plan. Often these payments begin before the confirmation hearing on the proposed plan occurs. In light of that, 11 U.S.C. § 1326(a)(2) directs the standing trustee to "retain" these pre-confirmation payments until the confirmation hearing, when the proposed reorganization plan is either confirmed or confirmation is denied. *Id.* § 1326(a)(2). "If a plan is confirmed, the trustee shall distribute

any such [pre-confirmation] payment in accordance with the plan . . . ." *Id.* But "[i]f a plan is not confirmed, the trustee shall return any such [pre-confirmation] payments . . . to the debtor." *Id.* The question presented here is: If a plan is not confirmed, can the standing trustee deduct and keep his fee before returning the rest of the pre-confirmation payments to the debtor or must the trustee instead return the entire amount of pre-confirmation payments to the debtor without deducting his fee?

*In re Doll*, 57 F.4th 1129, 1134 (10th Cir. 2023), cert. denied, 144 S. Ct. 1001 (2024).

In *Doll*, the Tenth Circuit held that "read together, 28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(a)(2) unambiguously require the trustee to return the pre-confirmation payments to the debtor without deducting the trustee's fee when a plan is not confirmed." *Id.* There is a split of authority, however, as to whether a trustee may deduct her fee before returning the payments to the debtor. Compare the conclusion in *Doll*, *supra*; *Marshall v. Johnson*, 100 F.4th 914 (7th Cir. 2024); and *Matter of Evans*, 69 F.4th 1101 (9th Cir. 2023), cert. denied, 144 S. Ct. 1004 (2024) (both holding the same and decided after the bankruptcy court's order in this case), with *In re Nardello*, 514 B.R. 105 (D.N.J. 2014) (holding that the Chapter 13 trustee is entitled to retain the § 586(e)(2) percentage fee when a case is dismissed prior to plan confirmation); *In re Harmon*, No. 1:19-BK-01424-TLM, 2021 WL 3087744, at *8 (B.A.P. 9th Cir. July 20, 2021) (holding same); and *Soussis v. Macco*, No. 20-CV-05673 (JMA), 2022 WL 203751, at *1 (E.D.N.Y. Jan. 24, 2022) (holding same at the time of the bankruptcy court's decision, but since overturned in *In re Soussis*, 136 F.4th 415 (2d Cir. 2025) to follow the reasoning in *Marshall v. Johnson*, *Matter of Evans*, and *Doll*).[1]

---

[1] In each of the cases cited addressing the matter of trustee fees paid by the debtor from the bankruptcy estate, the debtor has raised the issue as the appellant.

At the time of dismissal in the present matter, the bankruptcy estate totaled

$147,466.06 from the following payments:

$35,398.23 paid by Debtor

$111,787.87 from three state court settlements

$279.76 collected from Debtor's wages

(Bankr. Dkt. No. 295 p. 3.)

The Trustee retained $11,974.65 collected from payments during the pendency of the

case, leaving $135,491.41 in the estate. *Id.* The Trustee requested direction from the

bankruptcy court on disbursement of the estate funds, recommending that she retain

her fee. (Bankr. Dkt. No. 281.) Findling objected to her analysis for this

recommendation. (Bankr. Dkt. No. 285 p. 14.) The bankruptcy court carefully considered

the issue, ultimately agreeing with the analysis in *Nardello*, *Harmon*, and *Soussis*,

*supra*, and ordered the Trustee to retain her percentage fee. (Bankr. Dkt. No. 295 p. 12).

Findling's appeal raises the same objection he previously filed with the bankruptcy court

regarding this issue. (Bankr. Dkt. No. 285.)

The Debtor is not a party to this appeal. Findling is a creditor in the bankruptcy

case. He and his law firm, Findling Law Firm, PLC, represented Debtor in the three

matters settled in state court where the settlement amounts were paid to the bankruptcy

estate under 11 USC §542(a). (ECF No. 35, PageID.587–88; the total amount of these

settlements paid to the estate was $111,787.87, *supra*.) Findling claims an equitable

charging lien on the settlement funds for services provided in these matters under state

law. (ECF No. 35, PageID.587.) Findling never gives a total dollar amount for his lien in

his response to the motion, rather stating that "[t]he Debtor's fee agreement required her to pay fifty percent (50%) of the recovery to Appellants." (ECF No. 35, PageID.587.)

There is no dispute that Findling provided services that were critical to these settlement outcomes; the Debtor and the bankruptcy court each acknowledge his claimed liens throughout the record. The amount of the lien was never calculated prior to payment of the settlements into the estate, however, and the amounts were also never determined as part of the bankruptcy court case prior to dismissal. Findling has submitted evidence to support the existence of his lien, that, again, is not in dispute, but he claims no specific amount. Despite never having determined the validity, extent, or the amount of his lien in any court, Findling claims his interest extends to the Trustee's fee, going so far as to apply the terms of his fee agreement in the state court matters with Debtor to the portion of the Trustee's fee collected from the settlement payments under his lien. (ECF No. 35, PageID.599 ("Appellants also have the right to seek disgorgement for payment of their attorney fees from half (50%) of the Trustee's statutory fee ($8,943.03).").) Findling bases his standing on this interest in the trustee fees awarded in the bankruptcy court order he appeals.

## II.    Standard of Review

The district court sits as an appellate court when reviewing decisions of the bankruptcy court. 28 U.S.C. § 158. Parties may appeal by right from "final judgments, orders, and decrees" of bankruptcy courts "in cases and proceedings." 28 U.S.C. § 158(a). Congress's use of the word "proceedings" in § 158(a) makes bankruptcy court orders immediately appealable "if they finally dispose of discrete disputes within the larger [bankruptcy] case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quoting

*Howard Delivery Srv., Inc. v. Zurich Am. Ins.*, 547 U.S. 651, 657 n.3 (2006)). When a bankruptcy court order is appealed, the bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed de novo. *B-Line, LLC v. Wingerter*, 594 F.3d 931, 935–36 (6th Cir. 2010).

### III.   Analysis

The Trustee argues that the Court should dismiss Findling's appeal for lack of Article III standing, prudential or third party standing, and bankruptcy appellate standing. (ECF No. 31, PageID.540). Findling argues that he has a pecuniary interest in the Trustee's fee because of the attorney charging lien against settlement funds paid to the bankruptcy estate, and that this interest creates a direct financial stake in the order sufficient to grant him standing to make his appeal. (ECF No. 35, PageID.600.) Findling also points to the bankruptcy court opinion finding that he had standing to make his objection to the Trustee fee in bankruptcy court proceedings below. (ECF No. 35, PageID.586).

#### A.   Bankruptcy Standing

Bankruptcy courts are not Article III courts, and in a bankruptcy court proceeding, standing is broadly granted to parties of interest. *See generally in re Cap. Contracting Co.*, 924 F.3d 890 (6th Cir. 2019) (discussing the nuances of bankruptcy standing). To appeal a bankruptcy court order, however, the party must meet constitutional standing requirements, and only a "person aggrieved" has standing to appeal a bankruptcy order in the Sixth Circuit. *In re LTV Steel Co., Inc.*, 560 F.3d 449, 452 (6th Cir. 2009). For this reason, the bankruptcy court's determination that Findling had standing to object to a motion in bankruptcy court is not dispositive here. Additionally, "[a] party does not

6

automatically have appellate standing by virtue of being a creditor." *In re Trailer Source, Inc.*, 555 F.3d 231, 250 (6th Cir. 2009) (collecting cases). In order to be a "person aggrieved," the appellant must have "a financial stake in the bankruptcy court's order." *Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir.1996) (citations omitted). A party has such a stake when a bankruptcy court order directly "diminishes their property, increases their burdens or impairs their rights." *Id.* The doctrine was derived from the now-repealed Bankruptcy Act of 1898. Under that authority, "the Code permitted a party in a bankruptcy proceeding to appeal only if the appeal's result would put money in the party's pocket or compel it to write a check." *In re Schubert*, No. 21-3969, 2023 WL 2663257, at *2 (6th Cir. Mar. 28, 2023). Determining whether an appellant is a "person aggrieved" is a question of fact for the appellate court. *In re Hum. Hous.*, 666 B.R. 332, 345–46 (B.A.P. 6th Cir. 2025) (citing *Fid. Bank*, 77 F.3d at 882). "Whether an order directly and adversely affects the appellant's pecuniary interests is interpreted narrowly, and 'person aggrieved' standing does not arise from concerns about separate litigation unrelated to an interest protected by the Bankruptcy Code." *In re Murray Energy Holdings Co.*, 624 B.R. 606, 611–12 (B.A.P. 6th Cir. 2021). The appellant asserting standing has the burden of proving that it is a "person aggrieved" by the order appealed. *In re Hum. Hous.*, 666 B.R. 345–46.

The legitimacy of the "person aggrieved" standard in bankruptcy appeals has been debated within the Sixth Circuit following the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L.Ed.2d 392 (2014). *See, e.g., In re Schubert*, 2023 WL 2663257, at *2–3, *4–5 (with differing views expressed in the opinion and concurrence). The standard, however,

remains. *See Cal. Palms Addiction Recovery Campus, Inc. v. Vara,* 87 F.4th 734, 739 n.2 (6th Cir. 2023) (finding standing based on the appellant suffering an adverse, pecuniary consequence "directly resulting from" the order on appeal, and citing *Fid. Bank*, 77 F.3d at 882, which applied the "person aggrieved" doctrine in its holding); and *In re Cap. Contracting Co.*, 924 F.3d 890, 893 (6th Cir. 2019) (acknowledging that the Sixth Circuit has yet to consider *Lexmark's* effect, if any, on the "person aggrieved" test governing standing in bankruptcy appeals, but has continued to apply it). As the "person aggrieved" doctrine remains precedential in this Circuit, and as the parties addressed the standard in briefs on the motion without objection, the Court will apply it here. S*ee in re Schubert*, 2023 WL 2663257 (concluding same).

Findling argues he is a "person aggrieved" with standing to appeal the bankruptcy order because his charging lien for attorney services rendered to the Debtor on state court settlements paid to the bankruptcy estate extends to the Trustee's fees. Form his arguments, Findling seems to believe that his lien extends to the fee because 28 U.S.C. § 586(e)(2) directs the trustee to collect her percentage fee "from all payments received" as they are made to the estate, and the settlements subject to his lien were each a payment made to the estate. (*See* Bankr. Dkt. No. 275 p. 4 (Findling asked the bankruptcy court to segregate the settlement payments made to the estate because their full amounts were subject to his lien).) He claims to have suffered a direct harm from the bankruptcy court's ruling because he cannot be returned to his pre-petition position as intended by §349(b)(3) unless the fees are retuned and the settlements subject to his lien are each restored to their full amount. (ECF No. 35, PageID.594.) Findling also asserts that when the settlement amounts were returned to

the Debtor, he was prejudiced by the loss of his charging lien, though he cites nothing to establish this loss and makes no argument to explain how his appeal of trustee fees could remedy it, if it were so. (ECF No. 35, PageID.597–98.)

### B.      Findling's Michigan Charging Lien

In Michigan, an attorney's charging lien is a creature of the common law. *Kysor Indus. Corp. v. D.M. Liquidating Co.*, 11 Mich. App. 438, 445 (1968). "It is so called because the costs and fees of the attorney are made a charge on the judgment recovered, and this charge is enforced by the court." *Canney v. Canney*, 131 Mich. 363, 366 (1902). "The [charging] lien never extends beyond the costs and fees due the attorney in the suit in which the judgment is recovered." *Id.* Under Michigan law, equitable attorney charging liens are automatically considered perfected when the judgment or recovery in a particular suit is reached. *Kasben v. Dery*, 174 F. App'x 955, 961 (6th Cir. 2006) (citing *George v. Gelman*, 201 Mich.App. 474, 506 N.W.2d 583, 584 (1993)). An attorney's lien is subject to any rights in the property that are valid against the client at the time the lien attaches; that is, priority is determined by the first-in-time rule. *Laborers Pension Tr. Fund-Detroit & Vicinity v. Interior Exterior Specialists Co.*, 824 F. Supp. 2d 764, 774 (E.D. Mich. 2011) (citations omitted).

The Trustee argues that a charging lien does not create a property right or an assignment but rather a charge against a judgment or settlement that must be validated and valued and is "subject to the control of the court for the protection of the client and third parties." (ECF No. 31, PageID.552.) Even if Findling received the relief he seeks and the Trustee was required to return her fee, the money would return to the Debtor,

9

not Findling, and would still be subject to his lien for determination of payment outside the bankruptcy court. (*Id.* at PageID.533.) The Court agrees.

That Findling has a charging lien on the settlement payments is not in dispute. In the bankruptcy proceedings, the Debtor admitted that she does not dispute that Findling's legal services resulted in the recovery of property for the benefit of the Debtor's bankruptcy estate. (Bankr. Dkt. No. 271 p. 2.) This, along with the evidence of fee agreements Findling provided, supports Findling's claim to the existence of some charging lien of an undermined value on the settlement amounts paid into the bankruptcy estate. The Debtor also acknowledged during the proceedings that there were factual and legal issues regarding the lien's value that were still unresolved. *Id.* The bankruptcy court agreed, finding that the amount of Findling's lien was never determined and could not be determined by the bankruptcy court once the matter was dismissed. (Bankr. Dkt. No. 275 p. 8.)

A charging lien is equitable in nature. The existence or attachment of a charging lien is automatic, but whether such a lien may be enforced depends on the facts of the case. *Eldridge v. Eldridge*, No. 365601, 2024 WL 1596941, at *5 (Mich. Ct. App. Apr. 11, 2024). Generally, a party requesting a post-judgment award of attorney fees must show both that the attorney fees were incurred and that they were reasonable. *McIntosh v. McIntosh*, 282 Mich.App. 471, 483, 768 N.W.2d 325 (2009). "When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Souden v. Souden*, 303 Mich. App. 406, 415, 844 N.W.2d 151, 158 (2013) (citing *Reed v. Reed*, 265 Mich.App. 131, 166, 693 N.W.2d 825 (2005)). Because the value of

Findling's lien has not been determined, Findling cannot show any direct financial harm

from the Trustee's fee to object to it. A party experiences such harm when a bankruptcy

court order "diminishes their property, increases their burdens or impairs their rights."

*Fid. Bank*, 77 F.3d at 882 (citations omitted). Findling cannot show that his property is

diminished because the value of his property is not established, and the outcome of this

appeal has no bearing on his right to pursue his lien outside the bankruptcy court.

      The Trustee goes through multiple calculations of possible fee amounts to show

that Findling's fee could not extend to the Trustee's fees because under every

hypothetical valuation, the remaining estate balance provides sufficient equity cushion

to Findling's claims. (ECF No. 31, PageID.541–44.) The Trustee concludes that the lien

could only amount to $55,893.94 or $94,943.65, depending on which of two different

possible agreements Findling has claimed govern his lien, each below the $104,069.27

ultimately returned to the Debtor. (*Id.* at PageID.544). At different points in the

bankruptcy court proceedings, Findling claimed other varying amounts for his lien in

addition to these two. (Bankr. Dkt. No. 295 n. 14.) These inconsistencies in Findling's

claims further show that the lien's value is unknown, and it must be determined outside

the bankruptcy case that has been dismissed. Any hypothetical calculations cannot be

used to illustrate a direct financial harm because the lien can only extend as far as the

amount due. *Canney v. Canney*, 131 Mich. at 366. Without knowing that amount, we

cannot know where it begins or ends. At the point of dismissal, Findling's lien was not a

dollar amount due, but rather an equitable right to determine the amount due and

enforce it accordingly under state law. No matter what the ultimate value, that right

remains.

C.      The Trustee's Fee

The Trustee also argues that even though she collected a portion of her fee from the state court settlements as payments to the estate, the fee is the responsibility of the Debtor. (ECF No. 31, PageID.532.) Contesting the fee the Debtor is required to pay is outside Findling's zone of interest as a creditor, and he therefore cannot be a "person aggrieved" in this matter. *Id.* The Court agrees. Even if Findling could show that the amount of the Trustee's fee paid from the settlement subject to his lien left his claim underwater, he still has no direct interest in an order requiring the Debtor to pay a fee from the bankruptcy estate. Findling's lien is a lien on the state court settlements; it is not a lien against the bankruptcy estate. *In re Kay Bee Kay Props., LLC*, 618 B.R. 486, 492–93 (Bankr. E.D. Mich. 2020) (citations omitted). For this reason, his lien cannot extend to the fee amount collected from payments to the estate, even if those payments were made from settlements under his lien. *Id.* Findling's interest in the lien is an indirect interest in the estate that is the subject of his appeal, and an indirect interest cannot support his standing as a "person aggrieved." *In re Trailer Source, Inc.*, 555 F.3d at 250 ("To have standing to appeal, the party must demonstrate he has a direct and adverse pecuniary interest in each order he challenges.").

Additionally, a trustee's fee is a liability to the estate and the responsibility of the debtor. *See In re Nardello*, 514 B.R. 105, 114 (D.N.J. 2014) (concluding that the Trustee's fee is a user fee to pay for services rendered by the trustee in collecting and holding fees prior to plan confirmation, and the user is the debtor). *See also Off. of United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487, 491 (2024) ("Congress designed the U. S. Trustee Program to be entirely self-funded by user fees

paid by debtors. See 28 U.S.C. § 589a(b).”). While Findling asserts that the Trustee fee reduces the estate amount available to him as collateral for his lien, appealing a fee paid by the estate is an interest in avoiding liability to the estate. *In re LTV Steel Co., Inc.*, 560 F.3d 449, 454 (6th Cir. 2009). Liability to the estate is a liability to the debtor, not to Findling. If this appeal was successful, the Trustee's fee would be paid to the Debtor, not to Findling, just as the rest of the estate encumbered by Findling's lien was paid to the Debtor. (Bankr. Dkt. No. 296 p. 2.) Because the appeal's result could not result in a direct payment to Findling, he cannot appeal the order as a "person aggrieved." *In re Schubert*, 2023 WL 2663257, at *2.

### D.   Restoring Pre-Petition Status

Finally, Findling argues that "revesting under §349(b)(3) must also include the Trustee's disgorgement of her fee. Otherwise, Appellants cannot be restored to their pre-petition status." (ECF No. 35, PageID.594.) The goal of § 349 is to restore the parties, as nearly as possible, to their respective positions prior to the bankruptcy filing. In this case, Findling has the same right to determine the value of his lien in a non-bankruptcy court and enforce it under state law as he did prior to the bankruptcy case. The bankruptcy court acknowledged Findling's lien in its order, preserving the lien without prejudice. (Bankr. Dkt. No. 296.) The Trustee's fee does not change his lien rights.

For all the reasons above, the Court concludes that Findling is not a "person aggrieved" by the bankruptcy court's order.

### IV.   Conclusion

Because Findling is not a "person aggrieved" by the bankruptcy court's order, he does not have standing to appeal it. Because he lacks standing to appeal, he also lacks standing to apply for direct certification of his appeal to the Sixth Circuit. Therefore, the Court GRANTS the Trustee's motion to dismiss and DENIES Findling's motion for direction certification.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 18, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2025, by electronic and/or ordinary mail.

s/ Marlena Williams
Case Manager